UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TECHLINK, INC., a Hawaiian corporation,

    Plaintiff,

v.

GRAYS HARBOR PUBLIC DEVELOPMENT AUTHORITY, a Washington public corporation,

    Defendant.

Case No. C06-5424RJB

ORDER DENYING DEFENDANT GRAYS HARBOR PUBLIC DEVELOPMENT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Grays Harbor Public Development Authority's Motion for Summary Judgment (Dkt. 31). The Court has reviewed the pleadings filed in support of and in response to the motion and the remainder of the file herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed or taken in the light most favorable to the plaintiff: Grays Harbor Public Development Authority ("Grays Harbor") owns the Satsop Power Site ("Satsop" or "site"), which consists of two nuclear power plants that were never fully constructed. Dkt. 4 (complaint) at 2. Techlink, Inc. ("Techlink") is a corporation that buys and sells nuclear equipment. *Id.* at 1. Allan Kemp is the president of Techlink. *Id.*

In the 1970s, the Washington Public Power Supply System ("the Washington PPSS") obtained a license and began construction of the Satsop Power Site. As a part of the licensing process, the

ORDER
Page - 1

Washington PPSS was required to maintain documentation proving the source and quality of nuclear components. Such documentation ensures that nuclear equipment may be used in nuclear applications and reflects extensive testing and inspection of the equipment. Dkt. 38 at 1. Construction halted due to a lack of funding. The Washington PPSS attempted to preserve the nuclear documentation in the hopes of restarting construction, but the Washington PPSS license was eventually terminated in 1994. *See* Dkt. 33-3, Exh. C at 6-7. Documentation preservation policies continued until at least 2001. *See* Dkt. 39-2, Exh. 1 at 14-16; Dkt. 39-2, Exh. 2 at 50-51. The focus of such policies changed because nuclear equipment was being maintained for sale rather than for use at Satsop. Dkt. 39-2, Exh. 2 at 30-31.

Grays Harbor is the current owner of the Satsop site and is attempting to sell certain assets and to develop the facility as an industrial park. Dkt. 32 at 2. As part of these efforts, Grays Harbor and Techlink entered into an agreement entitled "Nuclear Steam Supply System Marketing and Sales Agreement" ("Agreement") in January of 2001. Dkt. 4 at 3. Grays Harbor contends that this agreement was reached with the hope that Techlink would sell Grays Harbor nuclear equipment to other nuclear facilities. In January of 2004, Techlink and Grays Harbor amended the Agreement to require Grays Harbor to preserve nuclear documentation for certain pieces of equipment. Dkt. 38 at 2.

Techlink completed several sales but contends that it was unable to complete the sale of eighty-nine specialized Control Element Drive Mechanisms ("CEDM") to an Arizona nuclear power plant and lost profits totaling more than $5 million because Grays Harbor could not locate the proper nuclear documentation, the Certified Material Test Reports ("CMTR"), for the equipment. Dkt. 4 at 4; Dkt. 33-2, Exh. B at 42, 49. Techlink contends that Grays Harbor was obligated under the contract to provide such nuclear documentation to Techlink and that failure to do so constitutes breach of contract.

Grays Harbor now moves for summary judgment, contending that judgment on Techlink's breach of contract claim is proper because there is no obligation for Techlink to buy or Grays Harbor to sell any of all of the nuclear equipment and because Grays Harbor never agreed to provide nuclear documentation and agreed only to provide assistance with such documentation. Dkt. 31 at 6.

## II. CONTRACTUAL PROVISIONS

The Motion for Summary Judgment references the following provisions of the Agreement:

BACKGROUND

. . .

The parties wish to confirm their general discussions, which includes [sic] the acknowledgment that the Equipment will be best marketed and sold at the highest price through the cooperation of the PDA and Techlink, but both recognize that there is no obligation for Techlink to buy or the [Grays Harbor] PDA to sell any or all of the Equipment.

Dkt. 33-4, Exh. K at 23.

C. The Equipment will be sold "as-is, where-is" with no warranty of any kind whatsoever. If the equipment is sold for use in a nuclear facility, the sales agreement shall indicate that certain regulations or statutes regulate such use or export. The sales agreement shall indicate that current and prior owners of the Equipment disclaim any representations, warranties or liability of any nature with respect to the items being sold.

*Id.* at 25.

5. Assistance

PDA agrees to provide assistance with Equipment documentation, a courtesy guide to parties inspecting the Equipment prior to purchase and, at Techlink's cost, arrange for packing and shipping of items sold.

*Id.*

Nuclear Equipment

Sale of nuclear-related equipment and material may require the nuclear quality documentation, radiographic film, drawings, technical manuals, test reports and other information to be released to Techlink upon sale, or at times before the sale to determine acceptability of those items. Nothing in this Agreement will obligate either the PDA or Techlink to accept responsibility for nuclear indemnification or to require reporting requirements pursuant to 10 CFR Part 21.

*Id.*

7. Indemnification

A. Techlink shall hold the PDA harmless from and against and will indemnify and defend the PDA, its employees, officers and directors, from all claims, liabilities, loss, costs, expenses, or damages, including but not limited to any injury (whether to body, property, or personal or business character or reputation) sustained by any person or to property caused by (1) any act or omission of Techlink, including any representation or failure to disclose information concerning the Equipment; or (2) negligence arising out of services provided by Techlink.

B. PDA shall hold Techlink harmless from and against and will indemnify Techlink, its employees, officers and directors, from all claims, liabilities, loss, costs, expenses or damages, including but not limited to any injury (whether to body, property, or personal or business character or reputation) sustained by any person or to property caused by (1) any required act or omission of PDA, including any false representation made by the PDA concerning the Equipment; or (2) negligence arising out of services provided by PDA.

*Id.* at 26.

## III. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B. BREACH OF CONTRACT**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). As the Washington Supreme Court has noted, courts asked to enforce a

contract may be called upon to either construct or interpret a contract's terms. *Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990). Contract construction requires the court to determine the legal consequences that flow from a contract's terms. *Id.* at 663. Contract construction is a purely legal question, and is therefore appropriate for resolution at the summary judgment stage.

Contract interpretation requires the court to determine the meaning of a contract term and the parties' intentions. *Id.* at 663. The Court's review is generally limited to the contract itself, and parol evidence or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written contracts that are valid, complete, unambiguous, and not affected by accident, fraud, or mistake. *Id.* at 670. Washington courts use the "context rule" when interpreting contracts, whereby extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Id.* at 667. Under the context rule, courts may consider parol evidence to interpret the contract as it was written. *Id.* at 669.

The parol evidence rule applies only to integrated contracts, which are contracts that are intended to be a final expression of the terms of the parties' agreement. *Id.* at 670. If the contract is integrated, it may be interpreted as a matter of law unless interpretation depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from such evidence. *Vacova Co. v. Farrell*, 62 Wn.App. 386, 402 (1991). If the contract is only partially integrated because the writing is a final expression of only those terms actually included in the contract but is not a complete expression of all terms agreed upon, the terms excluded from the contract may be proved by extrinsic evidence so long as any additional terms do not contradict written terms. *Berg*, 115 Wn.2d at 670. Whether a contract is integrated or only partially integrated is a question of fact. *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 140 Wn.2d 568, 579 (2000); *see also Berg*, 115 Wn.2d at 662.

Techlink concedes that the contractual provision allegedly breached is not explicitly memorialized in the written Agreement and instead attempts to prove the existence of such a provision through parol evidence. *See* Dkt. 37 at 18. Before considering such evidence, the Court must determine whether evidence extrinsic to the Agreement may be considered in support of Techlink's claim. To do so, the Court first inquires whether the Agreement is a fully integrated contract and then determines the extent to which parol evidence may aid in interpreting the Agreement.

**1. Integration**

The parties disagree as to whether the Agreement is an integrated contract. If the Court concludes that the Agreement is an integrated contract, the parol evidence rule applies, and extrinsic evidence may only be employed to discern the parties' intent. *See Berg*, 115 Wn.2d at 677. If the Court concludes that the Agreement is not an integrated contract, extrinsic evidence may be used to prove the existence of additional terms outside of the Agreement that do not conflict with the Agreement's written terms. *See id.* at 670. As noted above, whether a written contract is integrated, or only partially integrated, is a question of fact. *M.A. Mortenson Co., Inc.*, 140 Wn.2d at 579.

As a threshold matter, the Court notes that the Agreement does not contain an integration clause. *See* Dkt. 41 at 5 (reply). Furthermore, the Court is not persuaded that the Background section of the Agreement, which states that "[t]he parties wish to confirm their general discussions," has the effect of an integration clause. *See* Dkt. 33-4, Exh. K at 23.

Techlink has alleged facts that, if true, demonstrate that the Agreement did not encompass all terms of the parties' agreement. For example, John Perreault and Charles Butros, Washington PPSS managers, do not recall whether they and Mr. Kemp, of Techlink, discussed Grays Harbor's document retention policy. Dkt. 39-2, Exh. 1 at 12-13; Dkt. 39-2, Exh. 2 at 34. Mr. Kemp recalls that Messrs. Perreault and Butros made representations about the nuclear documentation. Dkt. 39-3, Exh. 3 at 9-10. Mr. Kemp contends that Mr. Perreault represented, on more than one occasion, that nuclear documentation packages were available for the equipment that had been delivered to the site. *Id.* at 10. Mr. Kemp further contends that such representations were memorialized in a computer presentation. *Id.* at 11-12. Mr. Kemp contends that he was shown the presentation in August of 2000, requested a hard copy, and received a hard copy by fax in February 2001. *Id.* at 12-13; Dkt. 33-3, Exh. E (faxed hard copy). These allegations are sufficient to create a genuine issue of material fact as to whether the Agreement was integrated.

**2. Parol Evidence**

If a contract is not fully integrated, "terms not included in the writing may be proved by extrinsic evidence provided that the additional terms are not inconsistent with the written terms." *Berg*, 115 Wn.2d at 670. Grays Harbor contends that even if the Agreement is only partially integrated, summary judgment is nevertheless warranted because the parol evidence offered by Techlink serves only to contradict the

Agreement. *Id.* at 10. As explained more fully below, the Court is not persuaded that a contract term requiring Grays Harbor to provide Techlink with nuclear documentation is inconsistent with the Agreement's written provisions.

First, Grays Harbor contends that a term requiring Grays Harbor to provide Techlink with nuclear documentation would contradict the Agreement's language regarding Grays Harbor being under no obligation to sell any or all equipment. *See* Dkt. 31 at 13. The Court is not persuaded that requiring Grays Harbor to provide nuclear documentation for equipment Techlink sought to buy is inconsistent with Grays Harbor being under no obligation to ultimately sell equipment to Techlink.

Second, Grays Harbor contends that requiring Grays Harbor to provide nuclear documentation is inconsistent with Grays Harbor's agreement to provide assistance with nuclear documentation. *See id.* Because it is not yet clear whether the Agreement is a fully integrated contract, the Court cannot yet determine whether this provision encompasses all of Grays Harbor's obligations regarding nuclear documentation.

Third, Grays Harbor cites the January 14, 2004, amendment under which nuclear documentation is to be preserved. *See id.* at 14. While the amendment could have sought to impose an obligation to provide nuclear documentation, the failure to do so does not demonstrate inconsistency with the Agreement.

Fourth, Grays Harbor contends that a requirement that Grays Harbor provide nuclear documentation is inconsistent with selling the equipment "as-is, where-is with no warranty of any kind." *See id.* at 15. The Court is not persuaded that "disclaim[ing] any representations, warranties or liabilities" in contracts with purchasers is inconsistent with Techlink requiring Grays Harbor to provide nuclear documentation.

Fifth, Grays Harbor cites the portion of Agreement stating only that nuclear documentation "may" be required for the sale of nuclear equipment. *Id.* This provision would not necessarily contradict a contract term outside of the written Agreement and under which Techlink could require Grays Harbor to provide nuclear documentation, irrespective of whether the purchaser of the equipment required such documentation.

Finally, Grays Harbor cites the Agreement's indemnification provisions. The Court is not persuaded that Techlink's indemnification of Grays Harbor for "failure to disclose information concerning the

Equipment" is inconsistent with Grays Harbor's alleged obligation to provide nuclear documentation to Techlink.

## C. CONCLUSION

Techlink has succeeded in creating a factual issue as to whether the Nuclear Steam Supply System Marketing and Sales Agreement was a fully integrated document. Because the Court cannot determine as a matter of law whether the contract was fully integrated, the Court cannot yet determine the extent to which parol evidence may be considered when interpreting the Agreement and will not speculate as to the persuasiveness of such parol evidence in the event the factfinder at trial were to conclude that the Agreement is integrated. The Court should therefore deny the defendant's motion.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Grays Harbor Public Development Authority's Motion for Summary Judgment (Dkt. 31) is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3rd day of July, 2007.

                                      Robert J. Bryan
                                      United States District Judge

ORDER
Page - 8